[No. 17226–3–I. Division One. June 15, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. WILBUR NELSON STARK, *Appellant.*

---

*Wilbur Nelson Stark,* pro se, *Rita J. Griffith* and *Mark W. Muenster* of *Washington Appellate Defender Association,* and *Max P. Harrison,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* for respondent.

PEKELIS, J.—Wilbur Nelson Stark appeals his conviction for one count of first degree statutory rape and one count of indecent liberties. He contends that the trial court erred in admitting certain out–of–court statements of the victims, in failing to require the jury to specify the act upon which it relied to convict on the statutory rape count, in refusing to appoint substitute counsel, and in running his sentences consecutively instead of concurrently with two previously imposed sentences for bail jumping. He also contends that he was denied the effective assistance of counsel.

# I
## FACTS

Stark was charged by amended information with one count of first degree statutory rape and two counts of indecent liberties. He was also charged in the same amended information with one count of forgery and one count of forgery of a registration certificate. All but count 1, first degree statutory rape, and count 2, indecent liberties, were

eventually dismissed.

Count 1 alleged that Stark engaged in sexual intercourse with S in violation of RCW 9A.44.070. S, who was 9 years old at the time of trial, testified as to three separate occasions on which she was sexually abused by Stark. On one of those occasions, she stated, Stark pulled down her panties and touched her vagina with his hand. Another time, he licked her vagina. On a third occasion, according to S, Stark put his penis in her vagina. Each of these incidents occurred at the home of S's babysitter, where Stark was a frequent visitor.

Count 2 alleged that Stark had sexual contact with J in violation of RCW 9A.44.100(1)(b). J, a 10–year–old friend of S, testified that Stark had rubbed her "private spot" on numerous occasions at the babysitter's home. On cross examination, J said that she had talked about these incidents with S before she told her mother about them.

In mid–July 1984, the babysitter told S's mother about a sexual incident involving S and the babysitter's 10–year–old son, D. After receiving this information, S's mother had a talk with S, during which S apparently disclosed that she had been sexually abused by Stark. After this conversation, on July 20, S was interviewed by a counselor to whom she apparently made the same disclosure. About a week later, at another interview, the counselor provided S's mother with a book on sexual abuse.

S's mother relayed the information she obtained from S to J's mother, who discussed it with J. Over defense objection, J's mother testified that when she asked J whether Stark had touched her anyplace he shouldn't touch her, J said yes. J's mother also testified, again over defense objection, that during the course of this conversation J did not repeat anything her mother described to her.

On April 4, 1985, Stark, who had failed to appear for trial, was found guilty in absentia on both counts 1 and 2. He was later apprehended and charged with two counts of bail jumping. On July 20, he pleaded guilty to the bail jumping charges. In return, the prosecutor agreed to move

to dismiss the remaining three counts of the amended information.

On August 23, Stark informed the court that he wished to discharge his retained trial counsel, Max Harrison, and asked the court to appoint substitute counsel to represent him at post–trial motions and sentencing on counts 1 and 2.[1] Although he had not been present at trial, Stark indicated that he wished to make a motion "against Max Harrison as ineffective counsel" and that he did not believe that Harrison could properly argue such a motion. Harrison himself asked the court to allow him to withdraw. The court declined to allow Harrison to withdraw, refused to appoint substitute counsel, and informed Stark that any motions alleging ineffective assistance of counsel would have to be made pro se.

On October 4, Stark was given concurrent sentences of 151 days, time he had already served, for the two bail jumping convictions. Due to various post–trial motions, sentencing for the other two convictions was delayed until October 10. At that time, Stark was given concurrent sentences for the two sexual offense convictions, which were to run consecutively with the concurrent sentences for the two bail jumping convictions.

## II
### PRIOR CONSISTENT STATEMENTS
#### A

During cross examination, defense counsel elicited testimony from S regarding the book she received from her counselor. Defense counsel attempted to suggest that this event occurred *before* S reported that she had been sexually abused by Stark. To rebut the inference that S's story was based on something she read in a book, S's mother was allowed to testify that the incident S described to her in mid–July before she received the book was "about oral sex." The court cautioned the jury that this testimony was

---

[1]Substitute counsel had already been appointed to represent Stark on the other charges.

to be considered for no other purpose than to establish the sequence of events. Stark contends that this testimony was inadmissible hearsay; the State contends that it was admissible under ER 801(d)(1)(ii)[2] as a "prior consistent statement" of S.

In some circumstances, where a witness' testimony has been impugned by a suggestion of recent fabrication, a prior consistent statement by the witness may tend to rehabilitate her credibility, and may therefore be admissible. *See State v. Harper,* 35 Wn. App. 855, 857–58, 670 P.2d 296 (1983), *review denied,* 100 Wn.2d 1035 (1984). However, a prior consistent statement is not admissible merely to reinforce or bolster a witness' testimony, since repetition is not a valid test of veracity. *State v. Purdom,* 106 Wn.2d 745, 750, 725 P.2d 622 (1986). In order for a statement *to* be admissible under ER 801(d)(1)(ii) for the purpose of counteracting a suggestion of fabrication, the statement must have been made *prior* to the events which gave rise to the inference of fabrication. *See Harper,* 35 Wn. App. at 857–58.

S's out–of–court statement was offered to rebut defense counsel's implied charge that S's stories about sexual abuse were fabrications derived from things she read in the book given to her by her counselor. Since S's statement was consistent with her trial testimony and was made *before* she received the book, it is probative of her credibility and is therefore admissible under ER 801(d)(1)(ii).

**B**

J's mother testified, over defense objection, that J stated that Stark touched her in a place where he shouldn't touch

---

[2]ER 801(d)(1)(ii) provides:

"**(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—

"(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . ."

her. Stark contends that this testimony was inadmissible hearsay; the State contends that it was admissible under ER 801(d)(1)(ii).

During cross examination by defense counsel, J testified that she had talked to S about Stark's sexual conduct *before* she talked to her mother. The State argues that this was an implied charge of fabrication which J's out-of-court statement to her mother was offered to rebut. *See* ER 801(d)(1)(ii). However, J's statement to her mother was made *after* her conversation with S, so the statement can be of no value in repairing any damage to J's credibility. Consequently, it does not fall within ER 801(d)(1)(ii) and its admission was error. *See Purdom,* 106 Wn.2d at 750; *Harper,* 35 Wn. App. at 857–58.

Nevertheless, the error was harmless. Just before J's mother testified, J herself testified that Stark had rubbed her "private spot" and that, when questioned, she had told her mother of this. Thus, the jury would have been aware of J's statement to her mother even without the latter's testimony as to that statement. Under these circumstances, we are convinced that the admission of the statement through J's mother's testimony could not, within reasonable probabilities, have materially affected the outcome of the trial. *See State v. Ellison,* 36 Wn. App. 564, 569–70, 676 P.2d 531, *review denied,* 101 Wn.2d 1010 (1984).[3]

### III
### Failure To Specify the Act Relied Upon To Convict

In her trial testimony, S described three separate instances of sexual abuse. Two of these, if true, would constitute "sexual intercourse" within the meaning of RCW 9A.44-

---

[3]J's mother also testified that during the course of this conversation, J did not repeat anything her mother described to her. Stark contends that this was inadmissible hearsay. However, the testimony in question is merely an assertion by J's mother, the witness, that whatever statement J made was not merely a repetition of what was described to her. That testimony does not contain a statement by J, and for that reason does not fall within the definition of hearsay. *See* ER 801(c).

.010(1); one would not. The jurors were instructed that in order to convict Stark of statutory rape, they would have to agree that he engaged in an act of sexual intercourse with S. They were not instructed, however, that they must specify, presumably by an answer to a special interrogatory, the act upon which they agreed. Stark contends that because we cannot know which of the three acts the jury relied on, we cannot be sure that it did not rely on the one act which would be insufficient to support a conviction for statutory rape. He concludes that the verdict is therefore defective, and that his conviction must be reversed.[4]

The argument has one very basic flaw. The jurors were instructed as to the definition of "sexual intercourse," and they were also instructed that in order to convict they must unanimously agree that *the same act of sexual intercourse* had been proved beyond a reasonable doubt. Thus, assuming, as we must, that these instructions were followed, *see State v. Corwin,* 32 Wn. App. 493, 495, 649 P.2d 119, *review denied,* 98 Wn.2d 1004 (1982), the jury could not have relied on the one act of the three that would not come within the definition of "sexual intercourse."

The cases relied on by Stark are inapposite. In *State v. Petrich,* 101 Wn.2d 566, 683 P.2d 173 (1984), the court held that in a case where the evidence indicates that several distinct criminal acts have been committed, but the defendant is charged with only one count of criminal conduct, a unanimous verdict will be assured if either (1) the State elects the act upon which it will rely for conviction, or (2) the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *Petrich,* 101 Wn.2d at 572; *see also State v. Fitzgerald,* 39 Wn. App. 652, 655–56, 694 P.2d 1117 (1985).

---

[4]As a preliminary matter, the State contends that because Stark did not request the court to submit interrogatories to the jury, the issue should not be considered on appeal. However, a defective verdict which deprives the defendant of his fundamental constitutional right to a jury trial may be raised for the first time on appeal. *See State v. Green,* 94 Wn.2d 216, 231, 616 P.2d 628 (1980); *State v. Fitzgerald,* 39 Wn. App. 652, 655, 694 P.2d 1117 (1985).

However, there is no requirement in *Petrich* that a jury so instructed must specify the act upon which it agrees.

In *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980), the jury was instructed that in order to find the defendant guilty of first degree aggravated murder, it must find that he caused the victim's death in the course of either (1) a first degree rape or (2) a first degree kidnapping. *Green,* 94 Wn.2d at 230. The jury was not instructed, however, that it must agree upon *which* of the two underlying crimes had been committed. *Green,* 94 Wn.2d at 233. Furthermore, there was no substantial evidence to support the kidnapping element. *Green,* 94 Wn.2d at 230. Consequently, the jury's general verdict of guilty was defective in two respects: first, it was possible for the jury to have convicted without having unanimously agreed upon which underlying offense had been committed; and second, it was possible for the jury to have relied upon an element for which there was no substantial evidence. *See Green,* 94 Wn.2d at 233. However, no such defect is present in the case sub judice, since the jury was instructed that it must unanimously agree upon which act of sexual intercourse had been committed, and because there was substantial evidence of both acts.

## IV
### FAILURE TO APPOINT SUBSTITUTE COUNSEL

Stark next contends that the trial court erred in refusing to allow Harrison to withdraw in spite of the latter's inability to argue his own ineffectiveness. Stark argues that the court's failure to appoint substitute counsel denied him his right to the effective assistance of counsel.

The determination of whether an indigent's dissatisfaction with his court appointed counsel[5] warrants appointment of substitute counsel rests within the sound discretion of the trial court. *State v. Lytle,* 71 Wn.2d 83, 84, 426 P.2d

---

[5]Stark was indigent and therefore eligible for appointed counsel at the time he asked the court to appoint substitute counsel. It is immaterial that Harrison was originally retained, not appointed.

502 (1967); *State v. Shelton,* 71 Wn.2d 838, 840, 431 P.2d 201 (1967); *State v. Sinclair,* 46 Wn. App. 433, 436, 730 P.2d 742 (1986). The court should consider the reasons given for the defendant's dissatisfaction, together with its own evaluation of the competence of existing counsel and the effect of substitution upon the scheduled proceedings. *See Shelton,* 71 Wn.2d at 839–40; *see also State v. Dougherty,* 33 Wn. App. 466, 471, 655 P.2d 1187 (1982), *review denied,* 99 Wn.2d 1023 (1983). In this case, Stark was unable to point to any deficiencies in Harrison's conduct at trial, since he himself was not present at trial. The primary reason given for Stark's dissatisfaction was Harrison's alleged refusal to have contact with him. Although Harrison himself denied this allegation, the trial court took the precaution of directing him to have sufficient contact with Stark for the purpose of any post–trial motions. Our own review of the record reveals no indication that Stark was not well represented by Harrison. Finally, we agree with the trial court that a substitute counsel could not have effectively argued post–trial motions without a significant delay in the proceedings. Consequently, we find no abuse of discretion.

Stark urges us to adopt a rule requiring the appointment of substitute counsel in cases in which a defendant wishes to argue his counsel's ineffectiveness. In these cases, he argues, counsel is faced with an impossible conflict of interest unless he is allowed to withdraw, and the defendant is denied representation unless substitute counsel is appointed. However, if a defendant could force the appointment of substitute counsel simply by expressing a desire to raise a claim of ineffective assistance of counsel, then the defendant could do so whenever he wished, for whatever reason. *See Sinclair,* 46 Wn. App. at 436–37 (defendant cannot force appointment of substitute counsel simply by filing complaint against current counsel). We decline to adopt such a rule.

## V
### SENTENCING

Stark next contends that the trial court erred in ordering that the sentences for his two sex offense convictions should run consecutively with the previously imposed sentences for his two bail jumping convictions. The relevant subsections of former RCW 9.94A.400 in effect at the time Stark was sentenced[6] are as follows:

> Consecutive/concurrent sentences. (1)(a) Except as provided in (b) of this subsection, whenever a person is convicted of two or more offenses, the sentence range for each offense shall be determined by using all other current and prior convictions as criminal history. All sentences so determined shall be served concurrently. . . .

> . . .

> (3) Subject to subsections (1) and (2) of this section, whenever a person is sentenced for a felony that was committed while the person was not under sentence of a felony, the sentence shall run consecutively with felony sentences previously imposed by any court in this or another state or by a federal court, unless the court pronouncing the subsequent sentence expressly orders that they be served concurrently.

Stark argues that former RCW 9.94A.400(1)(a) is the subsection applicable to this case, and that therefore the sex offense sentences should run concurrently with the bail jumping sentences.

With a few important exceptions not relevant to this case, former RCW 9.94A.400(1)(a) applies to sentences for convictions obtained in a single or consolidated proceeding. *See State v. Huntley,* 45 Wn. App. 658, 662, 726 P.2d 1254 (1986). However, when convictions are obtained in separate proceedings, former RCW 9.94A.400(3) applies. *Huntley,* 45 Wn. App. at 661–62. In such cases, the subsequently imposed sentence shall run consecutively with the previously imposed sentence, unless the court expressly orders that they be served concurrently. Former RCW 9.94A.400(3).

---

[6]RCW 9.94A.400 has since been amended by Laws of 1986, ch. 257, § 28.

Stark's sex offense convictions were obtained by jury verdict in a single proceeding on April 4, 1985. Under former RCW 9.94A.400(1)(a), the sentences for those two convictions were correctly made to run concurrently with each other. The two bail jumping convictions were obtained by a guilty plea in an entirely separate proceeding on July 20, and were also made to run concurrently with each other in accordance with former RCW 9.94A.400(1)(a). However, since the sex offense convictions were obtained in a proceeding separate from the one in which the bail jumping convictions were obtained, former RCW 9.94A.400(3) is the appropriate section to look to in determining whether the sex offense sentences should run concurrently or consecutively with the previously imposed bail jumping sentences. *See Huntley,* 45 Wn. App. at 661–62. Under former RCW 9.94A.400(3), the sentences were properly made to run consecutively.

## VI
### INEFFECTIVE ASSISTANCE OF COUNSEL

■ In his pro se brief, Stark contends that he was denied the effective assistance of counsel. A claim of ineffective assistance of counsel has two parts. First, the defendant must show that his counsel's performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). This entails showing that counsel's performance was not "reasonably effective" under "prevailing professional norms." *Strickland,* 466 U.S. at 687–88. Second, the defendant must show that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. In order to do so, the defendant must show that there is a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694.

Stark cites a number of ways in which Harrison's performance was allegedly deficient. He contends that Harrison was convinced of his guilt, that he made statements during closing argument which effectively conceded his

guilt, and that he failed to effectively cross–examine S. However, we have reviewed the record, and we find no indication that Harrison's performance was deficient. Consequently, we need not reach the second prong of the *Strickland* test.

## VII
### OTHER ISSUES

The remaining assignments of error in Stark's pro se brief merit little discussion. Stark assigns error to the trial court's failure to hold a competency hearing for S, although no such hearing was requested and 9–year–old S demonstrated no lack of competence. He contends that the court erred in allowing his trial to proceed in absentia, even though he voluntarily absented himself from the proceedings. He also attempts to argue that it was error to prosecute him for bail jumping despite the fact that he pleaded guilty to that offense. Next, he argues that the State failed to prove the dates on which the two sex offenses were committed, thereby failing to prove an "essential element" of the crimes. Finally, he argues that a physician who examined S should not have been allowed to testify because her findings were inconclusive. We have examined all of these contentions, and we find no merit in any of them.

Affirmed.

SCHOLFIELD, C.J., and COLEMAN, J., concur.

Review denied by Supreme Court October 6, 1987.