# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 71493-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MICHAEL ANTHONY GLASS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 2, 2015 |
| | ) | |

LAU, J. — Michael Glass pleaded guilty to two counts of domestic violence felony violation of a court order, two counts of misdemeanor fourth degree assault—domestic violence—and one count of first degree unlawful possession of a firearm. At his sentencing hearing, he moved pro se to withdraw his guilty plea alleging that he received ineffective assistance of counsel. The trial court denied his motion. On appeal, Glass alleges the trial court erred when it denied his motion to withdraw his guilty pleas based on ineffective assistance of counsel without appointing new counsel to litigate his claims. He also alleges that the finding in the judgment and sentence related to an ongoing pattern of abuse must be vacated.

Because Glass failed to establish either deficient performance by trial counsel or prejudice, the trial court acted within its discretion to deny appointment of new counsel

71493-7-I/2

and to deny his motion to withdraw his guilty pleas. But because the State properly concedes it agreed to dismiss the "ongoing pattern of abuse" aggravator, we remand with instructions to the trial court to strike or vacate the aggravator finding.

FACTS AND PROCEDURAL HISTORY[1]

The record shows the following facts: Michael Glass and Makeba Winstead were involved romantically for eight years. Between 2008 and 2012, Glass was convicted of multiple acts of domestic violence involving Winstead.

On April 6, 2013, Winstead was at Glass's home. During an argument, Glass bit Winstead's hand. The wound required emergency treatment and stiches to her palm and fingers.

Less than a week later, on April 11, Winstead and her sister, Tiffany Jones, went to Glass's home to retrieve some of her belongings. Glass was not present but returned while the two were still inside. Winstead tried to leave and put her hand on the front door knob. Glass grabbed her hand, ripping the stitches open. Jones stated that Glass squeezed Winstead's injured hand "very hard" and she could see the hand was bleeding. Glass drove Winstead and Jones to Virginia Mason Hospital. The hospital social worker told investigating Police Officer M. Harris about Winstead's April 6 emergency room visit and medical treatment. Winstead told Officer Harris about the April 6 and April 11 assaults. He confirmed the existence of two valid no-contact orders prohibiting Glass from contacting Winstead.

---

[1] Because Glass entered a guilty plea before trial, the facts related here are set out in the certificate of probable cause filed by Seattle Police Detective Nicole Freutel.

-2-

Christy Olson lives next door to Glass and his mother. She told Detective Nicole Freutel that Winstead stayed at the Glass residence since August or September 2012 when Glass got out of jail. She also reported seeing Glass's new girlfriend, Sarah Chaffee-Leingang, at the Glass residence within the past few months. Olson said she heard a loud disturbance at the Glass residence. Olson heard Winstead say, "Stop it," "leave me alone—you're hurting me," followed by Glass swearing loudly at Winstead in an "ugly mean voice." She also heard Glass yell, "I'll kill her," referring to Winstead. Olsen said she saw Glass and Winstead leave in his car after Winstead begged Glass to take her to the hospital. Later, Olsen saw Glass and Leingang return and remove a large rifle out of the trunk. She called 911 because she was afraid Glass would kill Winstead. Officer Harris spoke with Glass while investigating the assault, and he recovered the rifle.

Officer Welch contacted Leingang. She told him she was Glass's new girlfriend. She claimed that Winstead threatened her numerous times, assaulted her, broke into Glass's residence, and stole items. Leingang also said she was with Glass all day and the assault on Winstead never happened.

During a traffic stop, Glass identified himself to Officer Morrison as "Michael Glass." When the officer asked him where he was coming from, he said the hospital.

On September 20, 2013, the State charged Glass by first amended information with two counts of domestic violence felony violation of a court order, two counts of assault in the fourth degree—each with an "ongoing pattern of abuse" aggravator—and one count of unlawful possession of a firearm in the first degree.

Trial began on the morning of September 27, 2013, with pretrial motions. By the afternoon session, the parties notified the court of a negotiated plea agreement. The State agreed to dismiss the ongoing pattern of abuse aggravator and to recommend a prison-based drug offender sentencing alternative (DOSA). In exchange, Glass pleaded guilty as charged in the amended information.

At the sentencing hearing on November 1, 2013, Glass filed two letters and argued pro se to appoint substitute counsel and to withdraw his guilty plea.

In his first letter, dated September 12, 2013,[2] Glass wrote that he was aware that a defendant has a right to assistance of counsel. Glass wrote, "Your Honor I feel without a reasonable doubt that my present counsel and I cannot and will not mitigate atonement for mollifying representation." Glass claimed a breakdown in communication with his attorney.

His second letter, undated, thanked the court and those involved in the DOSA program. Glass wrote that he was "expressing complete ineffective assistance of counsel." He wrote that his attorney had visited him a "mere maximum of 4 times" while awaiting trial and that his requests for case information had been ignored. He wrote that he wanted to tell his attorney about Winstead's convictions for check fraud and his family's attempt to keep Winstead from visiting the house. He claimed his attorney failed to interview Winstead. Finally, he wrote that his attorney had "railroaded" him by saying "we cannot win" before informing him about the State's plea offer.

---

[2] The record shows that this letter was not presented to the court until the sentencing hearing on November 1, 2013.

The court asked whether Glass understood that if he withdrew his plea, he was not guaranteed a DOSA sentence. Glass responded that he wanted a new attorney to present additional mitigating evidence to get a better plea offer. The court continued the hearing to review Glass's letters and to determine whether Glass had established a prima facie case warranting an evidentiary hearing.

In an order dated November 4, 2013, the court denied Glass's motion for new counsel and to withdraw his plea of guilty.[3]

Glass submitted a third letter, filed on November 19, 2013, asking the court to reconsider its ruling. He repeated his claims and provided details about his family's history with Winstead and her prior false accusations.

The court sentenced Glass on November 22. At that hearing, Glass filed a motion and fourth letter, repeating his assertions and asking to withdraw his plea. The court denied his motion.[4]

The court imposed a prison-based DOSA on the two counts of felony violation of a court order and the one count of unlawful possession of a firearm, which resulted in a total of 39 months of confinement and 39 months of community custody. On the two

---

[3] The court's order stated:
"THIS MATTER came before the undersigned judge on defendant's motion of withdrawal of guilty plea and motion for appointment of new counsel. The Court, having considered the defendant's motion, and being fully advised in the premises:
"IT IS HEREBY ORDERED that the defendant's motion of withdrawal of guilty plea and motion for appointment of new counsel is DENIED."

[4] The State claims that the court allowed Glass to make a record of his last motion and read his fourth letter to the court. The record shows that the court allowed Glass to read aloud only a portion of his letter. The motion and letter are included in our record.

assault charges, both misdemeanors, the court imposed concurrent 364-day sentences.

Glass appeals.

## ANALYSIS

Glass claims that the trial court erred by denying his motion to withdraw his plea without appointing new counsel to represent him. Glass argues that (1) he experienced a breakdown in communication with his attorney, (2) his attorney failed to investigate his case, and (3) his attorney failed to provide him with discovery. We are not persuaded by these arguments.

Criminal defendants have a Sixth Amendment right to counsel at a plea withdrawal hearing. State v. Harell, 80 Wn. App. 802, 804, 911 P. 2d 1034 (1996). Glass's request for new counsel occurred in the context of, and was based on, his motion to withdraw his plea for ineffective assistance of counsel.

Under CrR 4.2(d), the trial court "shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of a plea." A court must allow withdrawal of a guilty plea if "necessary to correct a manifest injustice." CrR 4.2(f). A manifest injustice is one that is "'obvious, directly observable, overt, not obscure.'" State v. Saas, 118 Wn.2d 37, 42, 820 P.2d 505 (1991) (quoting State v. Taylor, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)). This is a demanding standard, justified by the safeguards protecting the defendant at the time the plea is entered. State v. Branch, 129 Wn.2d 635, 641, 919 P.2d 1228 (1996); Taylor, 83 Wn.2d at 596. Ineffective assistance of counsel constitutes a manifest injustice. State v. Marshall, 144 Wn.2d 266, 281, 27 P.3d 192 (2001).

For claims of ineffective assistance of counsel during the plea process, we apply the test used in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) and State v. Stowe, 71 Wn. App. 182, 186, 858 P.2d 267 (1993). Under that test, a defendant must show (1) deficient performance and (2) prejudice. Strickland, 466 U.S. at 687. We strongly presume effective representation. State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). To establish deficient performance, the defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy. Strickland, 466 U.S. at 689. We need not inquire further if the defendant fails to establish either prong. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

In plea bargaining, effective assistance of counsel merely requires counsel to actually and substantially assist the defendant in deciding whether to plead guilty. State v. Osborne, 102 Wn.2d 87, 99, 684 P.2d 683 (1984). To show prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on a trial. State v. Garcia, 57 Wn. App. 927, 933, 791 P.2d 244 (1990); State v. McCollom, 88 Wn. App. 977, 982, 947 P.2d 1235 (1997). Generally, this is shown by demonstrating to the court some legal or factual matter that was not discovered by counsel or conveyed to the defendant himself before entry of the plea of guilty. The Supreme Court has explained:

> "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial."

Garcia, 57 Wn. App. at 933 (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

We review denial of a motion to withdraw a guilty plea for abuse of discretion. Marshall, 144 Wn.2d at 280. Likewise, the determination of whether an indigent's dissatisfaction with his court-appointed counsel warrants appointment of substitute counsel rests within the sound discretion of the trial court. State v. Stark, 48 Wn. App. 245, 252, 738 P.2d 684 (1987). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. State v. Nguyen, 131 Wn. App. 815, 819, 129 P.3d 821 (2006).

### Failure to Communicate

For the first time at sentencing, Glass raised his attorney's deficient representation by arguing there was a communication breakdown with his attorney.[5] The prosecutor's comprehensive plea colloquy and the trial court's follow up colloquy demonstrate no communication breakdown between Glass and his attorney.[6] For example, when asked about his discussions with his attorney, Glass expressed general satisfaction with his attorney's advice. He also acknowledged in one of his letters filed with the court that his attorney met with him four times before trial.

> THE COURT: Okay. All right. And so, Mr. Glass, do you feel that you had enough time to confer with [your attorney] about whether to go to trial on this case or accept the—the State's plea offer?

---

[5] Nothing in our record shows Glass ever moved to discharge his attorney before sentencing and his attorney never sought to withdraw based on irreconcilable conflicts. And Glass did not raise any of his concerns to the trial court when trial began.

[6] The plea colloquy undermines Glass's bare assertion of duress.

THE DEFENDANT: You know, Your Honor, in a situation like this, there's—there's always doubt and questions either way. But, yes, I had enough time to review and make a cognizant decision.

THE COURT: Okay. And are you comfortable going forward now with your plea?

THE DEFENDANT: Yes, I am.

THE COURT: Okay. All right. And did you carefully review both these plea forms with [your attorney]?

THE DEFENDANT: I did.

THE COURT: --before you signed them?

THE DEFENDANT: I did.

....

THE COURT: Okay. All right. And do you—have you had enough time to discuss with [your attorney] the joint recommendation for a prison-based DOSA?

THE DEFENDANT: Yes, I have.

Report of Proceedings (Sept. 26, 2013) (RP) at 59–61.

[THE STATE]: And he's gone over both your documents, the documents you have in front of you, your Statement on Plea of Guilty for the felony and misdemeanor matters?

THE DEFENDANT: Yes. Yes.

[THE STATE]: Answered all your questions to the best of his ability?

THE DEFENDANT: Yes.

[THE STATE]: You feel confident that you—based on your consultation with [your attorney], that you understand the consequences associated with pleading guilty to these offenses?

THE DEFENDANT: Yes, I do.

RP at 38.

During the State's colloquy, the prosecutor asked Glass whether he understood

the elements the State was required to prove if he chose to go to trial:

[THE STATE]: Now that you had an opportunity to speak with [your attorney] and review the Amended Information, do you understand all the elements that each of the five charges that you would plead guilty to that the state would have to prove beyond a reasonable doubt if we went to trial?

THE DEFENDANT: Yes.

[THE STATE]: Do you understand by pleading guilty to all these offenses, that you're waiving your right to a trial?

THE DEFENDANT: Yes, I do.

71493-7-I/10

RP at 40.

The State discussed each of the constitutional rights Glass would be waiving. The State asked whether his attorney had gone over those rights with him:

> [THE STATE]: Have you reviewed each of these rights with [your attorney?
> THE DEFENDANT: Yes, I have.
> [THE STATE]: Do you understand by pleading guilty to the offenses that we've discussed already this afternoon, that you are waiving each of those rights in paragraph five listed A through F?
> THE DEFENDANT: Yes, I do.

RP at 41.

The record here plainly demonstrates that Glass's attorney provided actual and substantial assistance to Glass on the decision whether to plead guilty. Other than bare assertions, nothing of record indicates a breakdown of communication between Glass and his trial counsel.

Failure to Investigate

Glass also claims his attorney failed to investigate.[7] Generally, an attorney must perform an adequate investigation prior to recommending a guilty plea. State v. A.N.J., 168 Wn.2d 91, 109–12, 225 P.3d 956 (2010).

In particular, Glass cites his attorney's failure to interview his family and Winstead about her statement that "if she could not have me, no one could." He claimed the interviews would show Winstead initiated contact and stalked the house. But the record shows that defense counsel interviewed Winstead. Counsel's trial

---

[7] Glass neglects to mention that his attorney sought to subpoena Leingang for trial as soon as the State released her from its subpoena. Presumably, she would testify in accordance with her statement summarized above.

memorandum informed the court that he needed more time to complete Winstead's defense interview: "Makeba Winstead has yet to be interviewed to a conclusion by the defense. The parties have scheduled the completion of her interview at 11:30 on the morning of the first day of trial. The Court is requested to recess for this interview."

The record indicates the court recessed to allow the interview to take place. In defendant's presentence report filed with the court, his attorney wrote, "At the defense interview, [Winstead] reported that she is in recovery."

We also reject Glass's claim that his attorney should have investigated his claim that Winstead initiated contact with him and stalked the house. Even assuming Winstead initiated contact with Glass, consent by the protected party is not a defense to charges of felony violation of a court order. State v. Dejarlais, 136 Wn.2d 939, 946, 969 P.2d 90 (1998). Glass cannot show that failure to investigate this issue would either undermine counsel's assistance or change his decision to accept the State's offer.

And Glass fails to explain how any information gained from family interviews would have altered counsel's plea recommendation or his own decision to accept the State's offer. His conclusory assertion that he wanted a better plea deal or that he felt "railroaded" is insufficient to meet his burden. Furthermore, there is no absolute requirement that counsel interview all witnesses before trial. In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 488, 965 P.2d 593 (1998). Glass fails to overcome the presumption that this decision was a strategic choice by counsel.

Glass also incorrectly argues that his attorney failed to raise evidence of Winstead's prior crimes of dishonesty.[8] The record shows that the trial court, the State, and defense counsel discussed Winstead's convictions for crimes of dishonesty. Before trial, the parties stipulated that her convictions for crimes of dishonesty within the last 10 years were admissible under ER 609. The court, the State, and defense counsel also discussed the admissibility of Osborne's prior convictions at trial. Glass's claim that this evidence would have altered either the State's plea offer or his decision to accept it is unpersuasive. None of the alleged investigation failures Glass asserts involve exculpatory evidence.

Glass must show that there is a reasonable probability he would not have pleaded guilty but for the alleged failures of counsel. McCollom, 88 Wn. App. at 982. When Glass moved to withdraw his plea, he stated that he wanted a better offer from the State:

> THE COURT: Okay. All right. And so, Mr. Glass, you are—with the understanding that this is a recommended DOSA, you're still asking the Court to allow you to withdraw your guilty plea so that you can have a trial. Am I correct?
> THE DEFENDANT: So that I can have another attorney at least present more mitigating evidence to—in support of better plea offer, if that should be something that comes up at that point in time.

RP (Nov. 1, 2013) at 72. Glass fails to show that his attorney neglected to adequately investigate his case. And he makes no showing that he would have rejected the State's offer and gone to trial but for this alleged failure.[9]

---

[8] In his second pro se letter, Glass claimed, "These mitigating factors play a huge role in the mitigation process."

[9] His attorney successfully negotiated a plea agreement that resulted in a DOSA sentence and dismissal of the aggravator. The record establishes that given Glass's

### Failure to Provide Discovery

Glass contends that his attorney failed to share discovery with him. He relies on CrR 4.7(h)(3). That rule provides:

> Custody of Materials. Any materials furnished to an attorney pursuant to these rules shall remain in the exclusive custody of the attorney and be used only for the purpose of conducting the party's side of the case, unless otherwise agreed by the parties or ordered by the court, and shall be subject to such other terms and conditions as the parties may agree or the court may provide. Further, a defense attorney shall be permitted to provide a copy of the materials to the defendant after making appropriate redactions which are approved by the prosecuting authority or order of the court.

This rule was amended in 2005 by adding new language to subsection (h)(3) governing custody of materials. The amendment permits a prosecuting attorney and defense attorney to agree on, or the court to order, an exception to the requirement that discovery materials remain in the "exclusive custody" of the defense attorney but only after making appropriate redactions of sensitive information as approved by the court or prosecuting attorney.

---

history and the State's evidence, his attorney negotiated a reasonable and beneficial resolution for Glass.

For example, Glass told the court on November 2, 2013, that he took responsibility for his actions and then stated he wished to have new counsel so that he could obtain a better plea offer. In his second letter, he expressed his gratitude for being allowed to participate in the DOSA program and get drug treatment. And at sentencing on November 22, 2013, he stated he looked forward to being a part of the DOSA program and that he thought it would assist him greatly.

Glass's second letter stated in pertinent part:

"Your Honor, Thank you for your time and efforts. I would also like to acknowledge and thank the parties involved in the forefront and behind the scenes who put the DOSA program together.

"I truly believe that my philandering relationship with drugs and alcohol would have cut my life span drastically, if not ended it!

"My thanks and gratitude go out to the individuals behind the program who are unequivocally seeking out the most positively effective solutions for people who struggle with addiction. Though I'm expressing genuine appreciation for the State's concern for the above issue, I ultimately bear the responsibility for my actions."

Glass claims, with no citation to authority, that "[c]ompetent counsel provides his client with discovery." Appellant's Br. at 9. An appellate court need not consider issues unsupported by citation to authority. State v. Lord, 117 Wn.2d 829, 853, 822 P.2d 177 (1991). Where no authorities are cited in support of a proposition, the court is not required to search out authorities but may assume that counsel, after diligent search, has found none. State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000). We also note as quoted above, that CrR 4.7(h)(3) generally requires that discovery materials remain in the "exclusive custody" of the defense attorney.[10]

Glass also relies on an isolated quote from State v. Yates:

"In order to provide adequate information for informed pleas, expedited trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protections of persons, effective law enforcement, the adversary system, and national security."

111 Wn.2d 793, 797, 765 P.2d 291 (1988) (quoting CRIMINAL RULES TASK FORCE, WASHINGTON PROPOSED RULES OF CRIMINAL PROCEDURE 77 (1971)). Yates is not controlling. There, the issue dealt with whether the trial court abused its discretion when it ordered defense counsel to produce for in camera review all transcripts of interviews, notes taken during such interviews, and summaries of interviews of State's witnesses prepared by defense counsel and defense investigator.[11]

As to Glass's assertion the court erred by not appointing new counsel to represent him on his motion to withdraw his guilty plea, he presented the trial court with

---

[10] Despite opportunities to raise this alleged failure with the trial court before and during the plea hearing, Glass remained silent until he sought to withdraw his guilty plea.

[11] Yates predates the 2005 amendment to CrR 4.7(h)(3).

nothing more than mere allegations. He failed to make the required threshold showing that his plea was not valid based on trial counsel's alleged deficient performance. See State v. Quy Dinh Nguyen, 179 Wn. App. 271, 283, 319 P.3d 53 (2013) ("The trial court's approach, requiring an initial threshold showing of a valid basis for Nguyen's motion to withdraw his plea, was reasonable"). "[A] trial court is not required to waste valuable court time on frivolous or unjustified CrR 4.2 motions." State v. Davis, 125 Wn. App. 59, 68, 104 P.3d 11 (2004).

The court is not required to appoint new counsel when it has evaluated the defendant's claim and determines it is baseless. State v. Stark, 48 Wn. App. 245, 253, 738 P.2d 684 (1987) (declining to adopt a rule requiring the appointment of substitute counsel in cases in which defendant wishes to argue his counsel's ineffectiveness).

Aggravator

Glass contends the case should be remanded to correct a scrivener's error in the judgment and sentence. The State agreed, as part of the plea agreement, to dismiss the aggravating circumstance—the offenses are domestic violence offenses that were part of an ongoing pattern of abuse of the same victim. The State properly concedes this error. We accept the concession and remand to the trial court with instructions to vacate or strike the aggravator.

## CONCLUSION

Because Glass fails to establish either deficient performance by his trial counsel or prejudice resulting from counsel's alleged deficiencies, the trial court acted well within its discretion by denying Glass's motion for new counsel and to withdraw his plea of guilty. Because the State properly concedes that the "ongoing pattern of abuse" finding

in the judgment and sentence is erroneous, we affirm the judgment and sentence but remand with instructions to strike or vacate the aggravator finding.

Fau, J.

WE CONCUR:

Schindler, J.          Becker, J.