# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>KRISTOPHER MARTIN KORSAKAS,<br><br>Appellant. | No. 86843-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Kristopher Korsakas appeals his convictions, arguing the trial court erred by (1) depriving Korsakas of his right to counsel at a critical stage in the proceedings, (2) forcing Korsakas to appear for sentencing in shackles without an individualized assessment, (3) imposing an exceptional upward sentence based on judicial fact finding, or alternatively, without complying with the statutory mandate that it find substantial and compelling reasons, and (4) imposing the victim penalty assessment (VPA). We affirm Korsakas's convictions, and remand to allow the trial court to strike the VPA as a ministerial matter.

I

The State filed a third amended information accusing Korsakas of one count of gross misdemeanor stalking, one count of felony stalking S.M., five counts of domestic violence court order violation, and first degree criminal impersonation. Amid trial, Korsakas made a motion to proceed pro se. When asked why he wanted to proceed without defense counsel's assistance, Korsakas stated, "[W]e

haven't had enough time to go over things, and it's been just a breakdown of communication, lack of communication between the two of us." The trial court called a recess, and allowed Korsakas to discuss how to proceed with defense counsel.

After the recess, Korsakas withdrew his motion to proceed pro se and resolved to enter pleas of guilty. As part of the plea, Korsakas stipulated that he committed the charged counts, and committed the five counts of domestic violence court order violation "with deliberate cruelty or intimidation." The trial court conducted a plea colloquy and found the pleas to be knowingly, voluntarily, and intelligently given, and a factual basis existed for all eight counts and the aggravating circumstance of deliberate cruelty. Without inclusion of the eight current offenses, Korsakas's offender score was 12.[1]

At sentencing, while the State indicated that Korsakas was "present, in custody, not shackled," defense counsel indicated that Korsakas was "in leg restraints . . . . No objection to that for sentencing purposes." No further record was made concerning shackling. The State recommended the high end of 96 months in custody for the felony stalking count.[2] It requested an exceptional sentence under the "free crimes aggravator," consisting of 60 months each on the remaining domestic violence court order violation counts, all running consecutively, for a total of 33 years in custody. The State further argued the trial

_____

[1] Korsakas stipulated to an offender score of 14, but the State asked for an offender score of 12 because "two of the felonies are out of state and [we] did not do a comparability analysis."

[2] The standard range sentence was 72 to 96 months.

court should find the deliberate cruelty aggravator because Korsakas stipulated to it in his plea. S.M. described how Korsakas's stalking affected her and expressed continued fear.

After the State presented its sentencing recommendation, defense counsel informed the trial court that Korsakas was asking to make a motion to withdraw his guilty plea. Defense counsel requested that Korsakas make the motion himself because "[i]t's collateral attack" and defense counsel did not "normally get involved with that." Korsakas stated a manifest injustice occurred and his defense counsel "was so ineffective in mounting a defense that the only alternative that the defendant [had] was to take a guilty plea." The trial court considered Korsakas's motion under CrR 4.2(f), found that none of the four instances of manifest injustice existed, and denied the motion.

In its written findings, the trial court stated the five counts of court order violation "were domestic violence related and deliberate cruelty was present in the defendant's conduct per RCW 9.94A.535(h)(iii)." The trial court further stated, "Prior to pleading guilty to multiple current offenses, the defendant's offender score was 12. Some of the defendant's current offenses would go unpunished based on his offender score, justifying an exceptional sentence under RCW 9.94A.535(2)(c)." The trial court entered a conclusion of law that "an exceptional sentence above the standard range is appropriate based on the defendant's stipulation to, and the court's finding of, deliberate cruelty," and "based on the defendant's high offender score."

3

The trial court sentenced Korsakas to an above-range sentence of 102 months on count two and 60 months each for counts three through eight, to run consecutively with count two and concurrently with one another, for a total of 13 years, 6 months.[3] The trial court imposed the VPA and waived all other nonmandatory fees. Korsakas appeals.

II

Korsakas argues the trial court deprived him of his right to counsel at a critical stage of the proceedings when it did not appoint new counsel to represent Korsakas during his motion to withdraw his guilty plea. We disagree.

Under the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution, a criminal defendant is entitled to the assistance of counsel. State v. Heng, 2 Wn.3d 384, 388-89, 539 P.3d 13 (2023). The right to counsel attaches at a defendant's " 'first appearance before a judicial officer' where 'a defendant is told of the formal accusation against him and restrictions are imposed on his liberty.' " Id. at 389 (quoting Rothgery v. Gillespie County, 554 U.S. 191, 194, 128 S. Ct. 2578, 171 L. Ed. 2d 366 (2008)). The right to counsel requires defendants to have the ability to meaningfully and privately confer with their attorneys at all critical stages of the proceedings. State v. Anderson, 19 Wn. App. 2d 556, 562, 497 P.3d 880 (2021). "[A] critical stage is one where a defendant's rights were lost, defenses were waived, privileges were claimed or waived, or the outcome of the case was otherwise substantially

___

[3] The trial court entered a sentence of 364 days on the gross misdemeanor conviction on count one.

4

affected.' " Heng, 2 Wn.3d at 394. "[A] plea withdrawal hearing is a critical stage giving rise to the right to assistance of counsel." State v. Harell, 80 Wn. App. 802, 804, 911 P.2d 1034 (1996).

CrR 4.2(f) governs a trial court's ruling on a motion to withdraw a guilty plea if made before the trial court enters its final judgment and sentence. The rule provides, "The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." Id. A defendant's claim that they were denied effective assistance of counsel during the plea bargain process may support a finding of manifest injustice warranting the withdrawal of a guilty plea. State v. Taylor, 83 Wn.2d 594, 597, 512 P.2d 699 (1974). However, a defendant's allegation that counsel rendered ineffective assistance of counsel alone does not create a conflict of interest requiring the substitution of counsel. State v. Stark, 48 Wn. App. 245, 253, 738 P.2d 684 (1987). Rather, "[t]he determination of whether an indigent's dissatisfaction with his court-appointed counsel warrants appointment of substitution of counsel rests within the sound discretion of the trial court." Id. at 252-53 (footnote omitted). Stark recognized that "if a defendant could force the appointment of substitute counsel simply by expressing a desire to raise a claim of ineffective assistance of counsel, then the defendant could do so whenever he wished, for whatever reason." Id. at 253. Thus, where a defendant presents a CrR 4.2(f) motion to withdraw their guilty plea based on the allegation that defense counsel rendered ineffective assistance during the plea bargain process, the trial

court need not hold a hearing at which substitute counsel must be appointed if the trial court acted within its discretion in finding that the defendant's allegation lacked merit.

Korsakas argues that Harell shows that the trial court deprived him of his right to counsel on his motion to withdraw his guilty pleas. In Harell, the defendant sought to withdraw his guilty pleas based on an allegation that his counsel had rendered ineffective assistance during the plea stage. 80 Wn. App. at 803. The trial court was persuaded that the defendant alleged sufficient facts to warrant a hearing on the motion to withdraw the plea. Id. at 804. At the hearing, defense counsel declined to assist Harell and instead testified as a witness for the State, leaving Harell unrepresented. Id. at 803. The trial court denied Harell's motion to withdraw his guilty pleas. Id. Because the State did not assign error to the trial court's decision to have a hearing, we did not determine "the degree of specificity required to be shown by a defendant who seeks to withdraw his plea based upon alleged ineffectiveness of counsel, before the right to counsel attaches and a hearing is required." Id. at 804-05. The court noted, "Implicit in the trial court's decision to hold a hearing is a finding that sufficient facts were alleged to warrant a hearing." Id. at 804. The court found Harell was denied his right to counsel and, because an outright denial of the right to counsel is presumed prejudicial, reversed Harell's conviction without a harmless error analysis. Id. at 805.

This case is distinguishable. Here, the trial court implicitly and correctly concluded that Korsakas had not alleged facts sufficient to warrant an evidentiary

hearing on his motion to withdraw. Korsakas failed to explain how defense counsel was deficient in mounting a defense.

To prevail on an ineffective assistance of counsel claim, the defendant must demonstrate that (1) counsel's representation was deficient, meaning it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) the defendant was prejudiced, meaning there is a reasonable probability that the result of the proceeding would have been different but for the challenged conduct. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). In the context of a defendant's claim that their defense counsel rendered ineffective assistance during plea bargaining, the defendant must show that "but for counsel's failure to adequately advise [the defendant], [the defendant] would not have pleaded guilty." State v. McCollum, 88 Wn. App. 977, 982, 947 P.2d 1235 (1997). Korsakas's statement that defense counsel "was so ineffective in mounting a defense that the only alternative that the defendant [had] was to take a guilty plea" was inadequate to meet this standard.

The trial court acted within its discretion in ruling that Korsakas's allegation of ineffective assistance of counsel lacked merit, and so properly declined to hold an evidentiary hearing on his motion to withdraw his guilty plea. Thus, unlike the defendant in Harell, Korsakas was not denied counsel at a critical stage.

III

Korsakas argues for the first time on appeal that the trial court erred by allowing him to appear for sentencing in shackles without conducting an individualized assessment. Korsakas fails to establish a manifest error as required by RAP 2.5(a)(3).

The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington Constitution protect a criminal defendant's right to a fair trial. State v. Jackson, 195 Wn.2d 841, 852, 467 P.3d 97 (2020). "It is well settled that a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances." State v. Finch, 137 Wn.2d 792, 842, 975 P.2d 967 (1999) (plurality opinion). This right extends to nonjury proceedings such as sentencing. State v. Jarvis, 27 Wn. App. 2d 87, 98, 101, 530 P.3d 1058, review denied, 2 Wn.3d 1003, 537 P.3d 1027 (2023). Trial judges are vested with discretion to determine measures that implicate courtroom security, such as whether to restrain a defendant. State v. Hartzog, 96 Wn.2d 383, 396, 400, 635 P.2d 694 (1981). "[A] trial court *must* engage in an individualized inquiry into the use of restraints prior to every court appearance" and determine whether the restraints are necessary. Jackson, 195 Wn.2d at 854. We review a trial court's decision on whether to allow a defendant to appear in restraints for an abuse of discretion. Id. at 850.

Korsakas did not object to the alleged shackling in the trial court, but asserts error for the first time in this court. A claim of error may be raised for the first time

on appeal if it is a manifest error affecting a constitutional right.  RAP 2.5(a)(3); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).  "Manifest" requires a showing of actual prejudice.  Id. at 935.  "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest."  McFarland, 127 Wn.2d at 333.  Jackson indicates that it is Korsakas's initial burden to establish that he was unconstitutionally restrained, and he cannot do so on this record.  See 195 Wn.2d at 855-56 (examining whether error was harmless after first determining that the appellant established unconstitutional shackling).  But, additionally, the record lacks any factual basis that would permit a reviewing court to evaluate Korsakas's claim of error.  There are conflicting statements in the record about whether Korsakas was shackled at sentencing.  The State said Korsakas was "not shackled," while defense counsel said Korsakas was "in leg restraints."  The minutes from the sentencing hearing do not mention whether Korsakas was shackled or not.  No other record allows any factual conclusion to be drawn about whether Korsakas was shackled at all, let alone, if he was, analyze the consequences in the manner Jackson directs.  Korsakas's failure to object in the trial court leaves no record of the underlying facts that can be reviewed.  Therefore, under RAP 2.5(a), we do not reach this issue.

If Korsakas has evidence from outside the record regarding whether he was restrained at sentencing, he can raise these issues in a personal restraint petition.  McFarland, 127 Wn.2d at 335.

IV

A

Korsakas argues the imposition of an exceptional upward sentence under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, violates the Sixth Amendment because it requires courts to make a factual determination that substantial and compelling reasons justify an exceptional sentence.[4] We disagree.

The United States Supreme Court has held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" in order to comply with the Sixth Amendment right to a jury trial. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). It further explained to increase the statutory maximum, Blakely v. Washington, 542 U.S. 296, 303-04, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), or the mandatory minimum, Alleyne v. United States, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), additional fact finding must be conducted by a jury. In interpreting Apprendi and Blakely, the Washington Supreme Court clarified that the exception to the jury requirement under Apprendi applies "*only* for prior convictions" and that where an enhancement requires findings of "new factual determinations and conclusions" beyond "mere criminal history," those findings are

---

[4] The State argues Korsakas waived this issue by signing his stipulation on prior record and offender score, in which Korsakas agreed to waive "any such right to a jury determination of [factors that affect the determination of criminal history and offender score]." However, Korsakas stipulated to the existence of aggravating factors, but did not stipulate that the SRA scheme was constitutional.

required to be made by a jury. State v. Hughes, 154 Wn.2d 118, 141-42, 110 P.3d 192 (2005), abrogated on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006).

Korsakas argues the SRA scheme is unconstitutional because it "permits an exceptional sentence only if the court makes the additional finding that the found or admitted aggravating circumstance is a substantial and compelling reason justifying an exceptional sentence" in violation of Hurst v. Florida, 577 U.S. 92, 97, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016). The imposition of an exceptional sentence under the SRA is a two-step process prescribed by statute. First, the defendant must stipulate to the aggravating facts, or the jury must find "unanimously and beyond a reasonable doubt, one or more of the facts alleged by the state in support of an aggravated sentence" exist. RCW 9.94A.537(3), (6). Second, the trial court may impose an exceptional sentence "if it finds, considering the purposes of this chapter, that the facts found [by the jury] are substantial and compelling reasons justifying an exceptional sentence." Id. at .537(6). We have previously addressed the constitutionality of the SRA's exceptional sentencing scheme in the context of the Sixth and Fourteenth Amendments and concluded that it met due process requirements. State v. Johnson, 29 Wn. App. 2d 401, 425-26, 540 P.3d 831, review denied, 2 Wn.3d 1035, 547 P.3d 899 (2024); State v. Sage, 1 Wn. App. 2d 685, 707-10, 407 P.3d 359 (2017). Despite the statute's imprecise word choice,

> "[t]he only permissible 'finding of fact' by a sentencing judge on an exceptional sentence is to confirm that the jury has entered by

11

> special verdict its finding that an aggravating circumstance has been prove[d] beyond a reasonable doubt. Then it is up to the judge to make *the legal, not factual, determination* whether those aggravating circumstances are sufficiently substantial and compelling to warrant an exceptional sentence."

Johnson, 29 Wn. App. 2d at 425 (alterations in original) (quoting Sage, 1 Wn. App. 2d at 709). Korsakas's argument that the SRA is like the unconstitutional Florida sentencing scheme in Hurst is also rejected in Sage,

> But the Florida statute at issue expressly state[d] that the jury findings were "advisory." [Former] FLA. STAT. § 921.141 (2004). By contrast, under Washington procedure here, the jury exclusively resolves the factual question whether the aggravating circumstances have been prove[d] beyond a reasonable doubt.

1 Wn. App. 2d at 710 n.86.

Korsakas also relies on the more recent United States Supreme Court decision in Erlinger v. United States, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024). Erlinger pleaded guilty to possession of a firearm in violation of 18 U.S.C. § 922(g) and faced a sentence up to 10 years in prison. Id. at 825-26. However, the government charged Erlinger under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), which increased his prison term to a minimum of 15 years and to a maximum of life if he had three prior convictions for " 'violent felon[ies]' " or " 'serious drug offense[s]' " that were " 'committed on occasions different from one another.' " Id. (alterations in original) (quoting § 924(e)(1) (2012)). At a resentencing hearing, the government based its request for a 15year sentence on decades-old burglaries that spanned multiple days. Id. at 826. Erlinger argued the burglaries had not occurred on separate occasions but during a single criminal episode. Id. at 827.

The United States Supreme Court held that whether Erlinger's past offenses occurred on different occasions was a fact-laden task to be determined by a jury. Id. at 834. The Court reasoned that the ACCA's occasions inquiry required an examination of a range of facts, including whether past offenses were committed close in time and near to or far from one another, and whether the offenses were similar or intertwined in purpose and character. Id. at 828.

In Washington, a trial court may impose an exceptional sentence without a finding of fact by a jury if "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). A defendant's standard range sentence reaches its maximum limit at an offender score of nine. RCW 9.94A.510. We held in State v. Newlun, 142 Wn. App. 730, 742-43, 176 P.3d 529 (2008), that RCW 9.94A.535(2)(c) does not violate the Sixth Amendment because the determination of whether an offense goes unpunished requires simply objective mathematical application of RCW 9.94A.510's sentencing grid to the current offense. The court described the objective application of the statute: "If the number of current offenses, when applied to the sentencing grid, results in the legal conclusion that the defendant's presumptive sentence is identical to that which would be imposed if the defendant had committed fewer current offenses, then an exceptional sentence may be imposed." Id. at 743. "[I]n order to impose an exceptional sentence under RCW 9.94A.535(2)(c), the sentencing court does not need to look beyond 'facts reflected in the jury verdict or admitted by the

13

defendant.' " State v. Alvarado, 164 Wn.2d 556, 566, 192 P.3d 345 (2008) (internal quotation marks omitted) (quoting Newlun, 142 Wn. App. at 743). Thus, the imposition of an exceptional sentence under RCW 9.94A.535(2)(c) is unlike the fact-intensive inquiry in Erlinger.

Korsakas was also given an exceptional sentence under the deliberate cruelty aggravating factor. Though ordinarily a jury must determine whether a defendant's conduct manifested deliberate cruelty, RCW 9.94A.535(3)(h)(iii), a defendant's stipulation to facts supporting an exceptional sentence is a constitutional method for imposing such a sentence, Blakely, 542 U.S. at 311. Because Korsakas stipulated that for the five counts of domestic violence court order violation that he "did so with deliberate cruelty or intimidation," there was no fact finding conducted. As explained in Johnson and Sage, the sentencing judge's fixing an exceptional sentence in accord with the purposes of the SRA within the bounds permitted by factfinding establishing an aggravator is constitutional under Apprendi and Blakely. Erlinger's determination that the occasions inquiry under the ACCA amounted to fact finding does not undermine the reasoning of Johnson and Sage. The trial court did not engage in impermissible fact finding by determining Korsakas's criminal history and admission to deliberate cruelty supported an exceptional sentence.

B

Korsakas further argues the trial court improperly imposed an exceptional sentence above the standard range without finding "substantial and compelling reasons" to justify the sentence. We disagree.

A trial court "may impose" an exceptional sentence only if it finds "substantial and compelling reasons" to do so. RCW 9.94A.535. When an exceptional sentence is imposed, the trial court must "set forth the reasons for its decision in written findings of fact and conclusions of law." Id. However, "[n]othing in the plain language of the statute requires a sentencing court to use the precise phrase 'substantial and compelling.' " State v. Mutch, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). The legislature specifically stated that both a high offender score that results in current offenses going unpunished, RCW 9.94A.535(2)(c), and a defendant's deliberate cruelty during the commission of a domestic violence related offense, RCW 9.94A.535(3)(h)(iii), were reasons justifying an exceptional sentence. Here, the trial court made written findings that Korsakas's high offender score would result in current offenses going unpunished, and the charges were domestic violence related and deliberate cruelty was present in Korsakas's conduct. These were written findings of substantial and compelling factors, justifying an exceptional sentence in satisfaction of RCW 9.94A.535. The trial court's imposition of an exceptional upward sentence did not violate the SRA.

V

Korsakas argues the trial court erroneously imposed the VPA. The State does not object to remand to strike imposition of the fee. We accept the State's concession and remand accordingly.

Affirmed, and remanded to allow the trial court to strike the VPA as a ministerial matter.

_Birk, J._

WE CONCUR:

_Chung, J._                    _Dwyer, J._