IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83293-0-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| LASHONNE NICOLE DAVIS, | |
| Appellant. | |

COBURN, J. — A jury convicted Lashonne Davis of two counts of assault in the first degree for stabbing two people in the apartment in which she was temporarily residing. Davis now asserts that two judges improperly denied her separate motions to substitute appointed counsel, that the trial court violated the appearance of fairness doctrine by referencing a prior judges' case notes, and that the court miscalculated her offender score. Davis, in a statement of additional grounds, also claims ineffective assistance of counsel and violation of the double jeopardy clause. Davis has not established a basis for relief from her convictions. We affirm.

FACTS

The State charged Davis with two counts of assault in the first degree for stabbing her roommate and his friend. The State alleged domestic violence as to count

Citations and pincites are based on the Westlaw online version of the cited material.

one related to her roommate. Several months after being charged, Davis moved for substitution of counsel and explained to a King County Superior Court judge (first judge) that she was unhappy with her appointed counsel. Davis stated the two had a "conflict of interest," and she was not satisfied with her representation. Her counsel stated that he did not understand the context of her complaints. The court subsequently denied the motion, finding no sufficient basis to discharge appointed counsel.

The case proceeded to trial in May 2021. The jury found Davis guilty on both counts. The jury also issued special findings, finding that Davis was armed with a deadly weapon during the commission of both crimes and that she and one of the victims were members of the same family or household at the time of the stabbings.

In July 2021, approximately two months after the verdict but before sentencing, Davis again moved for a substitution of counsel, this time reading from prepared notes. The trial court (second judge) again denied her motion and the case proceeded to sentencing.

As part of the defense request for an exceptional downward sentence, Davis submitted a hand-written social history. As part of that history, Davis admitted to being "picked up" on "case #05-1-13394-1" in 2005 and pleaded guilty to assault in the fourth degree and misdemeanor harassment. At sentencing, the trial court accepted the State's calculated offender score based on Davis' prior convictions, which included manslaughter in the second degree and assault in the third degree pleaded as a domestic violence offense. The trial court also found that the two current convictions were "separate and distinct" for sentencing purposes. Davis was sentenced to 150 months' confinement on count one and 108 months' confinement on count two, to run

consecutively. The court also imposed a mandatory additional term of 24 months' confinement on each count to be served consecutively because the jury found a deadly weapon was used in the assaults.

Davis appeals.

DISCUSSION

Substitution of Counsel

Davis first challenges the trial court's denial of her motions for substitution of appointed counsel at two points during the proceedings. We address each in turn. Davis contends both judges who heard the motions failed to conduct an adequate inquiry.

When determining whether the trial court erred by refusing to appoint new counsel, we consider "the extent of the conflict, the adequacy of the inquiry, the timeliness of the motion, and the effect of the conflict on the representation actually provided." State v. Thompson, 169 Wn. App. 436, 458, 290 P.3d 996 (2012); see also In re Pers. Restraint of Stenson, 142 Wn.2d 710, 724, 16 P.3d 1 (2001) (Stenson II). Upon examining these factors, we will grant relief only if the trial court abused its discretion. State v. Lindsey, 177 Wn. App. 233, 248, 311 P.3d 61 (2013) (citing State v. Cross, 156 Wn.2d 580, 607, 132 P.3d 80 (2006), abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018)). An abuse of discretion occurs if the trial court's decision is manifestly unreasonable or based on untenable grounds. Lindsey, 177 Wn. App. at 248-49 (citing State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)). "'A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the

wrong legal standard.'" State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting State v. Rundquist, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

A criminal defendant "does not have an absolute, Sixth Amendment right to choose any particular advocate." State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004) (quoting State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997) (Stenson I)). A defendant "must show good cause to warrant substitution of [appointed] counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." Id. at 200 (quoting Stenson I, 132 Wn.2d at 734).

Generally, a defendant's loss of confidence or trust in appointed counsel is not a sufficient reason to appoint new counsel. Id. Attorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent the presentation of an adequate defense. Stenson I, 132 Wn.2d at 734 (citing State v. Lopez, 79 Wn. App. 755, 766, 904 P.2d 1179 (1995)). Factors to be considered in a decision to grant or deny a motion to substitute counsel are (1) the reasons given for the dissatisfaction, (2) the court's own evaluation of counsel, and (3) the effect of any substitution on the scheduled proceedings. Id. (citing State v. Stark, 48 Wn. App. 245, 253, 738 P.2d 684 (1987)).

The defendant need not show prejudice, but must demonstrate the alleged conflict caused some lapse in representation contrary to the defendant's interests, or that it likely affected particular aspects of counsel's advocacy on behalf of the defendant. State v. Regan, 143 Wn. App. 419, 428, 177 P.3d 783 (2008). As we recently held in State v. McCabe, No. 84635-3, slip op. at 6 (Wash. Ct. App. Jan. 30,

4

2023) (published in part), https://www.courts.wa.gov./opinions/pdf/846353.pdf, an attorney's failure to work with the defendant must be complete in order to establish that there has been a deprivation of counsel.

A trial court conducts an adequate inquiry into a conflict or breakdown in communication by allowing the defendant and counsel to express their concerns fully. State v. Schaller, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007) (citing Varga, 151 Wn.2d at 200-01). "Formal inquiry is not always essential where the defendant otherwise states [her] reasons for dissatisfaction on the record." Id. at 271.

*A. Pretrial Motion*

Davis first moved the court for new counsel in August 2020, approximately eight months into her case and before trial commenced. Davis' counsel set the motion hearing at her request. The trial court asked Davis what she wanted to tell the court regarding her motion for substitution of counsel. Davis explained that she felt there was a "conflict of interest" between herself and her appointed counsel. The judge responded by saying, "you said there's a conflict of interest. I'm not sure what you mean." Davis stated that her appointed counsel had been "untruthful to me about, you know," without further elaboration, and that counsel told her that "we are not going to mess this case up." Davis also complained that her attorney had not explained "certain things" clearly, "like dealing with court and paperwork and stuff like that." Davis said she did not feel like she was being "represented correctly" and needed someone who was going to be truthful with her in regards to her case. Davis provided no further explanation.

After listening to her response, the trial court gave Davis' appointed counsel an opportunity to respond. Her attorney stated that he did not understand the context of

her concerns and explained that Davis had been contacting the Department of Public Defense office rather than contacting him "lately" and that he wish he knew why. The trial court denied Davis' motion, explaining that it had not "heard any type of sufficient basis" to substitute counsel. The trial court further stated that Davis' appointed counsel was "more than competent counsel" and was "convinced [counsel was] going to do a good job on this case."

"[A] conflict over strategy is not the same thing as a conflict of interest." Cross, 156 Wn.2d at 607; see also Stenson II, 142 Wn.2d at 722 ("Case law does not support the application of the concept of a conflict of interest to conflicts between an attorney and client over trial strategy."). A conflict of interest exists when a defense attorney owes duties to a person whose interests are adverse to those of the defendant. State v. Kitt, 9 Wn. App. 2d 235, 244, 442 P.3d 1280 (2019). Under RPC 1.7(a)(2), an actual conflict exists if there is a significant risk that the client's representation will be materially limited by the lawyer's responsibilities to a third person or the lawyer's personal interests. The alleged conflict must be more than a "mere theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). In the context of a breakdown in communication, this means that the defendant must demonstrate a "complete collapse" in the relationship with counsel; "mere lack of accord" will not suffice. Cross, 156 Wn.2d at 606.

Davis relies on language stating that "in most circumstances a court can only ascertain the extent of a breakdown in communication by asking specific and targeted questions." United States v. Adelzo-Gonzalez, 268 F.3d 772, 777-78 (9th Cir. 2001). However, that case is factually distinguishable. In Adelzo–Gonzalez, the defendant's

attorney opposed his client's motions and openly accused him of lying and being coached. The defendant claimed his attorney used profanity and threatened to "sink him for 105 years" so he would not be able to see his wife and children. Id. at 779. The Ninth Circuit reversed, explaining that "[d]espite such striking signs of a serious conflict, the district court made no meaningful attempt to probe more deeply into the nature of Adelzo–Gonzalez's relationship with the appointed counsel." Id. at 778.

Davis also cites Lopez, 79 Wn. App. at 767, as an example of an inadequate inquiry. The defendant in Lopez told the court that he wanted "a different attorney because this one isn't helping me at all." Lopez, 79 Wn. App. at 764. The trial court abused its discretion in Lopez because it summarily denied the request without any inquiry when it responded to the motion by saying, "I'm not going to appoint you another attorney." Id. at 764.

Unlike the court in Lopez, the trial court in the instant case specifically asked Davis what it is she wished to share with the court regarding her motion. After Davis said there was a "conflict of interest" without specificity, the court explained to Davis that the court was not sure what she meant and allowed her to elaborate further.

Davis does not identify anything in the record that demonstrates the trial court abused its discretion in denying her request for substitution of her appointed counsel. The trial court afforded Davis the opportunity to explain her dissatisfaction with her counsel and allowed counsel to respond to those complaints. The trial court considered those responses and explained its own evaluation of Davis' appointed counsel's ability to represent her before denying the motion.

The trial court did not abuse its discretion in denying Davis' pretrial motion for

substitution of counsel.[1]

*B. Posttrial Motion*

In July 2021, after trial but before sentencing, Davis again moved for substitution of counsel. Davis' counsel filed a written motion for substitution of appointed counsel at Davis' request. This time the motion was heard before a different judge, the same one who presided over trial. The trial court indicated that she read the briefing on the issue provided by both parties before asking Davis to explain the reasons for her request.

Davis read from a prepared statement again indicating a conflict of interest between herself and appointed counsel. Davis largely reiterated the concerns she stated at the first hearing and explained that she felt her counsel had lied to her, lacked professionalism, and failed to explain aspects of the proceedings to her. Davis stated that her counsel had failed to provide her with documents and transcripts of proceedings in the case, had not adequately explained the bail process, and had "harassed" her about incidents she felt were unrelated to the case at hand.

After hearing from Davis, the trial court asked her counsel if there was anything he wanted to add, to which he replied, that it was "well stated by Ms. Davis that there is a breakdown in communications. And I'm simply not doing her any favors by staying on as her lawyer." Neither Davis or her counsel expressed a complete breakdown in communications.

---

[1] In her brief, Davis also notes that in November 2020, approximately three months after her initial motion for substitution of appointed counsel was denied, her attorney speculated that the reason she had not appeared for a scheduled hearing was that Davis "might be malingering, but I'm saying that without much basis beyond the fact that this is the second time we've been set out to trial, and on the eve of trial she said she's too sick to come."

The trial court said it was mostly hearing the same arguments Davis made in her previous similar motion that was denied. The court explained that judges shared notes internally and she had reviewed the prior judge's notes from the August hearing. The court explained that Davis had not said anything that indicated counsel had done anything to intimidate her or that was "inept or incompetent or not an appropriate decision." The trial court stated,

> So you know, I have to tell you, I don't believe you've shown a conflict of interest. I don't believe you've shown a complete breakdown in communication. What you showed me is, you're not willing to work with your attorney; and that you don't trust your attorney, which is different. That's kind of self-generated by you. Okay? And it's your decision on how you approach your attorney.
> But I just do not see how you've shown me that things are so much at odds between the two of you that [counsel] is unable to present an adequate defense at sentencing, which is what's coming up next.

The trial court also commented positively on counsel's performance during trial and her observation of him since she has been on the bench. She also noted that having represented Davis at trial, her appointed counsel was the person who knew her case best and in the best position to represent her at sentencing. The trial court denied Davis' motion.

In this second instance of requesting substitution of counsel, Davis again fails to identify specific circumstances indicating that good cause existed to substitute counsel or that the relationship between herself and her appointed counsel would prevent the presentation of an adequate defense at sentencing. The trial court properly considered the statements of both Davis and her attorney on the matter and considered the court's own evaluation of the attorney's performance through trial and posttrial motions prior to sentencing before denying the motion.

The trial court did not abuse its discretion in denying Davis' post-trial motion for substitution of counsel.

### Appearance of Fairness

Davis next contends that the trial court violated the appearance of fairness doctrine by "relying on ex parte communications between itself and the prior court" when it read a prior judge's case notes in considering Davis' second motion for substitution of counsel. Davis also challenges the trial court's reliance on its own prior interactions with Davis' appointed counsel as a violation of the same doctrine.

A criminal defendant has the right to be tried and sentenced by an impartial court. U.S. CONST. amends. VI, XIV § 1; WASH. CONST. art. 1, § 22. A judicial proceeding is valid under the appearance of fairness doctrine if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing. State v. Soliz-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017) (citing State v. Gamble, 168 Wn.2d 161, 187, 225 P.3d 973 (2010)). The law requires the judge to not just be impartial, but to *appear* impartial. Id. (citing Gamble, 168 Wn.2d at 187-88). The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes a reasonable observer knows and understands all the relevant facts. Id. (citing Sherman v. State, 128 Wn.2d 164, 206, 905 P.2d 355 (1995)). The remedy, if the appearance of fairness doctrine was violated, would be a new trial with a new judge. State v. Hendrickson, 81 Wn. App. 397, 402, 914 P.2d 1194 (1996).

We first address the trial court's reading of the previously assigned judge's internal notes prior to ruling on Davis' substitution of counsel motion. A judge is

generally prohibited from initiating, permitting, or considering ex parte communications concerning a pending matter. CJC 2.9(A). The Washington State Supreme Court has defined an ex parte communication as a "'communication between counsel and the court when opposing counsel is not present.'" State v. Perala, 132 Wn. App. 98, 112, 130 P.3d 852 (2006) (internal quotation marks omitted) (quoting State v. Watson, 155 Wn.2d 574, 579, 122 P.3d 903 (2005)).

A judge sharing notes with another judge about the same case is not ex parte communication. The Code of Judicial Conduct permits a judge to consult with court officials or other judges "to aid the judge in carrying out the judge's adjudicative responsibilities" so long as "the judge makes reasonable efforts to avoid receiving factual information that is not part of the record." CJC 2.9(A)(3). Davis asserts that the instant case is analogous with State v. Romano, in which this court reversed a conviction based on the trial court's independent factual investigation prior to sentencing. 34 Wn. App. 567, 662 P.2d 406 (1983). However, in that case, the defendant was convicted of theft in the first degree and the issue before the court was the amount of restitution the judge should impose. Romano, 34 Wn. App. at 568. Rather than relying on the evidence and argument properly before the court, the sentencing judge contacted personal friends engaged in the jewelry business to obtain their assessments of the defendant's purported income from his work as a jewelry salesman. Id. Romano is inapposite. Here, the judge acted within the scope of proper judicial conduct by reviewing the previous judge's notes regarding a similar motion hearing held in open court in the same case. Davis cites to no authority supporting her argument that such actions are prohibited. "Where no authorities are cited in support of

a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

Davis also argues that another violation of the appearance of fairness is the court's consideration of its own interactions with defense counsel. Davis argues, without citing any supporting authority, that the court relying on its prior working relationship with counsel appeared deeply unfair. Davis asserts in her Statement of Additional Grounds (SAG) the trial court described its relationship with defense counsel as "personal friends." Davis' recollection is inaccurate.

The trial court noted her observations of counsel during trial and believed he did a good job. The court also noted that it has known defense counsel since before the judge joined the bench, which was 20 years prior. With that context, the judge observed that counsel was really good, well prepared and effective and "about as good an attorney as you're likely to get." The trial court did not suggest it was personal friends with defense counsel. The comments, in context, suggests that the trial court had the opportunity over 20 years to professionally observe counsel's skills as an attorney. This was the court's own evaluation of counsel, which is a factor to consider in determining whether to grant or deny a motion for substitution of counsel. See Stenson I, 132 Wn.2d at 734 (citing Stark, 48 Wn. App. at 253). A reasonable observer who knows and understands all of the facts would not reasonably question the judge's impartiality in this context.

Davis has not established that the trial court violated the appearance of fairness

doctrine.

## Separate and Distinct Offenses

Davis also asks this court to disregard the Washington Supreme Court's holding in State v. Cubias, 155 Wn.2d 549, 552, 120 P.3d 929 (2005), and conclude that a jury, not a judge, should have determined if Davis' convictions were "separate and distinct" offenses for sentencing purposes.  Davis argues the finding requires her sentences for each count be served consecutively, exposing her to a punishment greater than that authorized by the jury's guilty verdict.  See Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

A trial court must impose consecutive sentences where a defendant is convicted of two or more "serious violent offenses" involving "separate and distinct criminal conduct."  RCW 9.94A.589(1)(b).  Assault in the first degree is a "serious violent offense."  RCW 9.94A.030(46)(a)(v).  To determine whether criminal conduct is separate and distinct, Washington courts rely on the definition of "same criminal conduct" under RCW 9.94A.589(1); Cubias, 155 Wn.2d at 552.  Two or more crimes constitute the "same criminal conduct" if they (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim.  RCW 9.94A.589(1)(a).  If two or more crimes do not meet the definition of "same criminal conduct," they are necessarily "separate and distinct."  Cubias, 155 Wn.2d at 552.

Where offenses involve separate victims, the offenses are considered "separate and distinct [criminal] conduct."  Id. at 552-53 (alteration in original) (quoting In re Pers. Restraint of Orange, 152 Wn.2d 795, 821, 100 P.3d 291 (2004)).  Here, the trial court

13

found that the evidence "clearly established that there were two separate assaults here against two separate victims," ruling that the offenses were separate and distinct. In Apprendi, the United States Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. It later clarified its decision in Blakely, holding that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303.

In Cubias, the Washington State Supreme Court held that "the trial court's imposition of consecutive sentences under RCW 9.94A.589(1)(b) does not increase the penalty for any single underlying offense beyond the statutory maximum provided for that offense and, therefore, does not run afoul of the decisions of the United States Supreme Court in Apprendi and Blakely." Cubias, 155 Wn.2d at 556. This court is bound by the decisions of the Washington State Supreme Court. 1000 Virginia Ltd. Partnership v. Vertecs Corp., 158 Wn.2d 566, 578, 146 P.3d 423 (2006) ("A decision by [the state supreme] court is binding on all lower courts in the state.").

The trial court did not err in finding that Davis' offenses were "separate and distinct."

Offender Score

Davis next challenges the calculation of her offender score. Davis contends that a prior conviction for manslaughter in the second degree should not have been counted in her offender score because it washed out her criminal history under RCW

9.94A.525(2)(b). Davis also argues that a prior assault in the third-degree conviction should have only counted as one point because domestic violence was not pled and proven.

"We review a sentencing court's calculation of an offender score de novo." State v. Tili, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003). The sentencing court follows the guidelines of the Sentencing Reform Act (SRA) to calculate an offender's score. See RCW 9.94A.525, .510. To determine a sentencing range under the SRA, a defendant is awarded "points" for each prior conviction under the parameters set out in RCW 9.94A.525. The offender score is calculated by "the sum of points accrued under [RCW 9.94A.525] rounded down to the nearest whole number" combined with the seriousness level of the offense, which together provide the standard sentencing range. RCW 9.94A.525; RCW 9.94A.510. In calculating an offender score, the sentencing court must (1) identify all prior convictions, (2) eliminate those that "wash out," and (3) count the prior convictions that remain. State v. Moeurn, 170 Wn.2d 169, 175, 240 P.3d 1158 (2010). The State must prove the existence of prior convictions by a preponderance of the evidence. In re Pers. Restraint of Adolph, 170 Wn.2d 556, 566, 243 P.3d 540 (2010). The State must introduce "evidence of some kind to support the alleged criminal history." State v. Payne, 117 Wn. App. 99, 105, 69 P.3d 889 (2003) (quoting State v. Ford, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)). A sentence based on a miscalculated offender score "is a fundamental defect that results in a complete miscarriage of justice" requiring resentencing. In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 876, 50 P.3d 618 (2002) (citing In re Pers. Restraint of Johnson, 131 Wn. 2d 558, 568-69, 933 P.2d 1019 (1997)).

15

*A. Manslaughter*

A prior conviction is not calculated in the offender score when a defendant has spent a sufficient period of time without committing any crimes resulting in conviction, in essence the offense "washes out." See RCW 9.94A.525(2). A prior conviction for a Class B felony washes out when a defendant has spent "[10] consecutive years in the community without committing any crime that subsequently results in a conviction." RCW 9.94A.525(2)(b). The State has the burden of proving a defendant's criminal history by a preponderance of the evidence. RCW 9.94A.500(1).

Davis pleaded guilty to one count of manslaughter in the second degree and was sentenced to 33 months' confinement in 2003.[2] Manslaughter in the second degree is a Class B felony. Former RCW 9A.32.070 (1997). Davis argues that the conviction should have washed out because the State did not present evidence that she committed another crime resulting in conviction in the 10 years following her release from confinement. Davis' prior felony criminal history listed the 2003 manslaughter conviction and a conviction in 2017 of assault in the third degree.

The State argues that Davis was convicted in 2006 of an assault in the fourth degree committed in 2005, preventing the manslaughter conviction from washing out. The State had submitted a 2017 plea agreement to assault in the third degree where she agreed to the criminal history attached by the prosecutor. That criminal history listed a 2005 offense under cause number "05-1-13394-1" for assault in the fourth degree without a disposition date. The State did submit its own sentencing

---

[2] The record provided does not contain the date on which Davis was released from confinement for this conviction.

memorandum that the prosecutor's understanding of Davis' criminal history included a 2006 conviction of assault in the fourth degree and harassment under cause number "05-1-13394-1." But a prosecutor's summary of a defendant's criminal history is insufficient to satisfy its burden to prove by a preponderance the existence of a criminal conviction. See State v. Hunley, 175 Wn.2d 901, 915, 287 P.3d 584 (2012).

However, Davis admitted to the sentencing court in her handwritten "social history" that in 2005 she was "picked up for case # 05-1-13394-1" and pleaded guilty to "Assault 4 and misdemeanor harassment" and "did 60 days on 90 days." This court has recently held that where a defendant "affirmatively acknowledges" a prior conviction in a filing submitted to the court, the State is relieved of its burden of proving the existence of the conviction. State v. Royal, No. 83322-7-I, slip op. at 7 (Wash. Ct. App. May 22, 2023), https://www.courts.wa.gov/opinions/pdf/833227.pdf. The Washington State Supreme Court has previously held similarly that a defendant's "affirmative acknowledgement of the existence and comparability of out-of-state convictions will render further proof" of the conviction unnecessary. State v. Ross, 152 Wn.2d 220, 233, 95 P.3d 1225 (2004) (citing Ford, 137 Wn.2d at 483 n. 5)). In determining existence and comparability of out of state convictions, the State similarly "bears the burden to prove by a preponderance of the evidence." Id. at 230. Because the State bears the same burden to prove both the existence of an in-state conviction and out-of-state conviction, it follows that the sentencing court would be able to rely on a defendant's "affirmative acknowledgement" of the existence of an in-state conviction in the same way it would for an out-of-state conviction.

Because Davis affirmatively admitted to a criminal conviction that occurred within

10 years following her conviction for manslaughter in the second degree, the court correctly counted her manslaughter conviction in her offender score because it did not wash out.[3]

*B. Assault in the Third Degree*

Davis also challenges the calculation of a 2017 assault in the third degree conviction as a domestic violence offense. A defendant's offender score may be increased if the defendant has a prior felony "domestic violence offense" that was "pleaded and proven" using the definition of "domestic violence" in RCW 9.94A.030. RCW 9.94A.525(21)(b). The definition of domestic violence includes assault in the third degree committed against another family or household member. RCW 9.94A.030(20)(a); See RCW 10.99.020(4)(iii). A "family or household member" includes "persons who have a biological or legal parent-child relationship." RCW 10.99.020(7)(c).

Here, Davis asserts that the trial court erred in finding that the conviction was for a crime of domestic violence because the judgment and sentence form provided to the court did not have the box for "domestic violence as defined in RCW 10.99.020 was pled and proved" checked. However, the judgement and sentence stated that the court finds that the defendant was guilty of "assault in the Third Degree – Domestic Violence." Documents accompanying that form, provided to the trial court by the State, included a statement by Davis acknowledging "I did cause bodily harm to T.D., a human being,

---

[3] We need not address the State's unpersuasive alternative argument that because Davis' current conviction occurred in King County Superior Court, the trial court was permitted to take judicial notice of the previous King County conviction as its own record.

when I struck her with a thing likely to produce bodily harm – specifically a dumbbell. T.D. is my biological child."

The trial court found that, despite the failure to check a box on the judgment and sentence form, "the State has clearly established that the prior Assault in the Third Degree was a Domestic Violence" based on that court's findings and Davis' own admission. We hold that the State met its burden of proving by a preponderance that Davis' prior assault in the third degree was a pleaded and proven "domestic violence offense" under RCW 9.94A.030.

We next address claims Davis asserts in a SAG that have not already been addressed in her direct appeal.

### Double Jeopardy

Davis also contends in her SAG that her two convictions in the instant case amount to double jeopardy because they were committed using the same weapon and committed at the same point in time.

Both the Fifth Amendment to the United States Constitution and article 1, § 9 of the Washington State Constitution prohibit double jeopardy. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; State v. Calle, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). Washington's double jeopardy clause offers the same protection as the federal constitution. State v. Womac, 160 Wn.2d 643, 650, 160 P.3d 40 (2007).

When offenses harm different victims, the offenses are not factually the same for purposes of double jeopardy. State v. Baldwin, 150 Wn.2d 448, 457, 901 P.2d 354 (1995). Here, the offenses caused harm to two different victims, King and Donaldson, and were not factually the same for the purposes of double jeopardy. Davis' two

19

convictions of assault in the first degree did not violate the double jeopardy clause.

<u>Ineffective Assistance of Counsel</u>

Davis makes several assertions critical of her defense attorney that can be best summarized as an ineffective assistance of counsel claim.

To show ineffective assistance of counsel, Davis must establish that her counsel's performance was both deficient and resulted in prejudice.  <u>State v. Grier</u>, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions, a strategic or tactical decision is not a basis for finding error.  <u>Strickland</u>, 466 U.S. at 689-91.

Davis' claims relate to information outside of the record precluding the panel's review.  Among her claims, she asserts that her attorney failed to inform her of any plea bargain offered by the State; failed to inform her of the correct sentencing range; failed to request a mental health evaluation; never discussed discovery with her; and never visited her in jail.  We cannot consider matters outside the record on a direct appeal.  <u>State v. McFarland</u>, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition.").

We affirm.

_____
Coburn, J.

WE CONCUR:

_____
Bowman, J

_____
Mann, J.

20